BED
31

# 553387

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **NATIONAL FAIR HOUSING ALLIANCE, INC.**, a Virginia Non-Profit Corporation;<br>1212 New York Avenue, N.W., Suite 525<br>Washington, DC 20005 | )   **CIVIL ACTION NO.**<br><br>)   **DEMAND FOR JURY TRIAL** |

and

Case: 4:07-cv-10385
Assigned To: Gadola, Paul V
Referral Judge: Scheer, Donald A
Filed: 01-24-2007 At 02:06 PM
CMP NATIONAL FAIR HOUSING ALLIANCE
INC V KIMBERLY HOBSON-HOLLOWELL, ET AL (EW)

**KIMBERLY HOBSON-HOLLOWELL and
DARRICK HOLLOWELL**, husband and
wife, on behalf of themselves and their three
minor children,                                                  )
20385 Danbury Lane
Harper Woods, Michigan 48225;                                    )

             **Plaintiffs**,                                  )

      **vs.**                                                   )

**TOWN & COUNTRY - STERLING
HEIGHTS, INC.**, a Michigan Corporation,                         )
operating under  its assumed named as
**CENTURY 21 TOWN & COUNTRY**,                                   )
800 W. University Dr
Rochester, Michigan 48307;                                       )

                               )

**CENTURY 21 REAL ESTATE LLC**, a
**Delaware limited liability corporation,**                       )
1 Campus Drive
Parsippany, New Jersey 07054                                      )

and                                                              )

**EDWARD A. DALLAS,**                                            )
898 Canterbury Rd.
Grosse Pointe Woods, Michigan, 48236                              )

             **Defendants**.                                )

---

## COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF

## I. SUMMARY OF THE ACTION

1.  Plaintiffs National Fair Housing Alliance ("NFHA") and Kimberly Hobson-Hollowell and Darrick Hollowell, on behalf of themselves and their three minor children ("the Hollowells"), bring this action for injunctive, declaratory, and monetary relief against Town & Country - Sterling Heights, Inc., which operates under its assumed named Century 21 Town & Country, Century 21 Real Estate LLC, and Edward A. Dallas.  Defendants discriminated against and continue to discriminate against African-American and White prospective homebuyers on the basis of race in their real estate sales practices.

2.  Century 21 Town & Country was identified by the United States Department of Housing & Urban Development's ("HUD") Housing Discrimination Study 2000 ("HDS 2000") as a real estate company that engaged in discriminatory housing practices.  HDS 2000 was a national research audit to determine the level of housing discrimination in the United States. After HDS 2000, NFHA conducted targeted follow-up enforcement testing of Century 21 Town & Country.

3.  NFHA conducted a series of paired fair housing tests involving African-American and White testers for the purpose of evaluating Century 21 Town & Country's real estate sales practices in the Detroit housing market.  Century 21 Town & Country's sales associates otherwise made housing unavailable because of race, discriminated in the terms or conditions of the sale of a dwelling or in the provision of services in connection with the sale of a dwelling based on race, discriminated in the terms or conditions of making a residential real estate transaction available because of race, and made discriminatory statements based on race.

Century 21 Town & Country's sales associates illegally steered prospective African-American and White homebuyers. Century 21 Town & Country's agents consistently and repeatedly showed potential African-American homebuyers homes in primarily African-American or integrated neighborhoods largely in the City of Detroit and showed potential White homebuyers homes in White neighborhoods primarily in the east side suburbs of Detroit. This pattern persisted even when Whites requested to view homes in predominately African-American neighborhoods or African Americans requested to inspect homes in predominately White neighborhoods because of race. Century 21 Town & Country's sales associates repeatedly showed more homes to White testers than to better qualified African-American testers because of race. Century 21 Town & Country's agents also made discriminatory statements about African-Americans and African-American communities based on race.

4.      In 2005, Darrick and Kimberly Hollowell, who are African-American, sought the assistance of Century 21 Real Estate LLC in selling their home in Detroit and buying a new home in one of the Grosse Pointes in Michigan.

5.      The Hollowells had previously selected the company they knew as "Century 21" to help them buy a home in Detroit. They were pleased with the services provided at that time by Century 21 Kee in Michigan, and therefore trusted "Century 21" to assist them with further housing needs. In 2000, when the Hollowells considered relocating out of state, they turned to the "Century 21" website to look for homes in Illinois and Indiana. And when they decided to move to the Grosse Pointes in 2005, they again looked to "Century 21" for assistance. Based on the national branding and advertising of "Century 21" as the nation's largest residential real

3

estate sales organization, the Hollowells believed that they would receive the same care and professional, courteous service at any one of the Century 21 franchises as they received from the Century 21 Kee office when they bought their first home. So, when Kimberly Hobson-Hollowell saw the Century 21 Town & Country office on Mack Avenue in Grosse Pointe Woods, with the familiar Century 21 sign logo, she believed that this office would provide the same high quality of services at a more convenient location. Century 21 Town & Country marketed themselves as "the No. 1 CENTURY 21 firm in Michigan" and "America's #1 Producing CENTURY 21 firm." The Hollowells believed Century 21 Town & Country representatives were agents of the national company, Century 21 Real Estate LLC, and believed that all of the offices were subject to the same standards and requirements.

6.      Century 21 Town & Country's Sales Associate, Edward A. Dallas, discouraged the Hollowells from moving to the Grosse Pointes, an area known for excellent public school districts and stable property values. Instead, Mr. Dallas steered them to Harper Woods because of their race. Mr. Dallas explained that some areas in Harper Woods are assigned to the Grosse Pointe school district, and he advised the family to move to a neighborhood in Harper Woods where the children could attend Grosse Pointe schools. Mr. Dallas was persistent in urging the Hollowells to look at homes in Harper Woods and did not give them an opportunity to see homes for sale in any of the other Grosse Pointes areas. In fact, the Hollowells specifically asked to see a home for sale located at 1681 Hollywood Avenue in Grosse Pointe Woods, but Mr. Dallas refused. Mr. Dallas successfully steered the Hollowells away from the Grosse Pointes and persuaded them to look at homes for sale in Harper Woods. On or about June 30, 2005, the

4

Hollowells purchased a home on Danbury Lane in Harper Woods, Michigan. Mr. Dallas assisted with the closing on that home as well as the sale of their house in Detroit.

7.     Edward A. Dallas' words and actions were intended to influence the Hollowells' choice of housing on a racial basis, and he effectively discouraged the Hollowells from buying a home in the Grosse Pointes on the basis of their race.

8.     According to Census 2000 data, the population of the Grosse Pointes is 97.2 percent White and 0.8 percent African-American (among other races and ethnicities). Harper Woods, on the other hand, is 11 percent African-American and is considered a "transitional neighborhood" due to the growing minority population.

9.     The National Center for Educational Statistics shows that of the seven Grosse Pointes elementary schools, the one attended by the Hollowells has the highest percentage of African-American students: 37%. This is significantly higher than the percent of African-American students in the other six schools, which range from 13% to as little as 1%.

10.     Mr. Dallas' unlawful discrimination because of race was consistent with Century 21 Town & Country's pattern and practice of steering prospective home buyers who are White *toward* White neighborhoods while steering prospective buyers who are African-American *away from* White neighborhoods.

11.     Defendants' discriminatory housing practices caused substantial injury to Plaintiffs and to African-American and integrated neighborhoods, businesses and schools throughout the Detroit Metropolitan area, including Detroit and Harper Woods. Defendants also caused injury to residents of White neighborhoods that were denied the many benefits that arise

from a racially integrated community. Defendants' policies and practices perpetuated residential racial segregation and have been inextricably intertwined with the underdevelopment of and under-investment in African-American neighborhoods in the Detroit Metropolitan Area.

## II. JURISDICTION AND VENUE

12.     Jurisdiction is conferred upon this Court under 28 U.S.C. § 1331 in that this action involves violations of the amended Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and 42 U.S.C. §§ 1981 and 1982, and it is an action arising under the Constitution, laws, or treaties of the United States. This Court has jurisdiction to issue a declaration that the Plaintiffs' rights have been violated pursuant to 28 U.S.C. §§ 2201 and 2202, and to grant injunctive relief and actual and punitive damages, as well as attorneys' fees and costs, pursuant to 42 U.S.C. §§ 3613 and 1988.

13.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) in that the claims alleged herein arose in Wayne County, Michigan and Macomb County, Michigan.

## III. PARTIES

14.     Plaintiff National Fair Housing Alliance, Inc. is a national non-profit public service organization incorporated under the laws of the Commonwealth of Virginia with its principal place of business at 1212 New York Avenue, N.W., Suite 525, Washington DC 20005. NFHA is a nationwide alliance of private, non-profit fair housing organizations, including organizations in Michigan. NFHA and its members represent the interests of home seekers, homeowners, including those in metropolitan Detroit, and other parties in need of assistance to enforce their rights to equal housing, including those in metropolitan Detroit. NFHA and its

6

member organizations work to promote fair housing across the United States and in Metropolitan Detroit. NFHA is the only national organization dedicated solely to ending housing discrimination and promoting residential integration. NFHA works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy and enforcement. One of NFHA's goals is the elimination of segregation in housing and the promotion of residential integration. NFHA has launched educational campaigns to address segregation in housing and real estate steering. The educational campaigns have targeted the Detroit Metropolitan Area since 1991.

15.     Plaintiffs Kimberly Hobson-Hollowell, Darrick Hollowell, and their three minor children (the "Hollowells") are African-American citizens of the United States. The Hollowells currently reside in their home located at 20385 Danbury Lane, Harper Woods, Michigan.

16.     Defendant Town & Country - Sterling Heights, Inc. is a for-profit corporation incorporated in Michigan with its principal place of business at 800 W. University Dr., Rochester, Michigan. It operates under the assumed name Century 21 Town & Country. Century 21 Town & Country, directly and through its agents, sells homes throughout the Detroit Metropolitan Area. Century 21 Town & Country is the top-producing Century 21 firm in Michigan and the top-producing Century 21 firm in the United States.

17.     Century 21 Real Estate LLC is a Delaware limited liability corporation. It is the franchisor of the Century 21 brand name. Its corporate offices are located at 1 Campus Drive, Parsippany, New Jersey.

7

18.     Defendant Edward A. Dallas is a citizen of the United States who currently

resides at 898 Canterbury Rd., Grosse Pointe Woods, Michigan. Mr. Dallas is a Sales Associate

for Century 21 Town & Country doing business at the office located at 19251 Mack Avenue,

Grosse Pointe Farms, in Wayne County, Michigan.

19.     Each of the defendants was the actual or apparent agent, employee or

representative of each of the other defendants. Each defendant, in doing the acts or omitting to

act as alleged in this complaint, was acting in the course and scope of his, her or its actual or

apparent authority pursuant to such agencies; or the alleged acts or omissions of each defendant

as agent were subsequently ratified and adopted by each agent as principal.

## IV.  FACTUAL ALLEGATIONS

### A.  RESIDENTIAL SEGREGATION CONTINUES AT HIGH LEVELS
### IN THE DETROIT METROPOLITAN AREA

20.     Detroit is one of the most segregated metropolitan areas in the United States. A

recent study found that Detroit is the most segregated metropolitan area of the largest 50

metropolitan areas with large Black populations in the United States. Similarly, the United

States Census Bureau has identified the Detroit Metropolitan Statistical Area ("MSA") as one of

the two most racially segregated MSAs in the United States. The Detroit MSA contains the

Michigan counties of Wayne, Oakland, Macomb, Lapeer, St. Clair and Monroe. Demographic

data compiled by the Census shows that the African-American population of Detroit is over 81%

while the African-American population of the Detroit MSA – of which Detroit is a part – is

approximately 23%. The Census data reflects the racial segregation of the population, with the

majority of African Americans residing in Detroit and the majority of the non-African-American population residing in the surrounding suburban areas.

21.     "Grosse Pointe" refers to a region in the Detroit Metopolitan Area that comprises five individual cities: Grosse Pointe (which is 97.18% White and 0.79% African-American according to 2000 census data), Grosse Pointe Farms (97.58% White, 0.65% African-American), Grosse Pointe Woods (96.30% White, 0.63% African-American), Grosse Pointe Park (92.48% White, 2.95% African-American), and Grosse Point Shores (93.80% White; 0.60% African-American).

22.     According to the 2000 census, Harper Woods is 85.92% White and 10.24% African-American.  Moreover, the census tract where the Hollowells now live is 20% African-American.

### B. NFHA'S INVESTIGATION OF CENTURY 21 TOWN & COUNTRY

23.     HUD's HDS 2000 identified Century 21 Town & Country as a real estate company that engaged in discriminatory housing practices.  HDS 2000 was a national research audit to determine the level of housing discrimination in the United States.  After HDS 2000, NFHA conducted targeted follow-up enforcement testing of Century 21 Town & Country.

24.     NFHA's real estate sales investigation utilized paired testing in its tests of Century 21 Town & Country.  Paired testing is a controlled method of measuring and documenting differences in the quality, quantity, and content of information and services offered or given to home seekers by housing providers or real estate companies.  In each paired test, there was a team of testers, one White and one African-American.  Two teams of testers

9

contacted the same real estate office.  Testers were assigned similar profiles about housing needs, financial qualifications and employment history.  In every test, the African-American tester was slightly more qualified than the White tester.  African-American testers had higher incomes, more money available for a down payment and longer employment histories than their White counterparts.

## C. DEFENDANTS' DISPARATE TREATMENT
## AND INTENTIONAL DISCRIMINATION

25.     The tests conducted by NFHA reveal that Century 21 Town & Country's sales associates otherwise made housing unavailable because of race, discriminated in the terms or conditions of the sale of a dwelling or in the provision of services in connection with the sale of a dwelling based on race, discriminated in the terms or conditions of making a residential real estate transaction available because of race, and made discriminatory statements based on race. Century 21 Town & Country's sales associates illegally steered African-American and White prospective homebuyers to different neighborhoods based on race.  Defendants' agents consistently showed potential African-American homebuyers homes in primarily African-American or integrated neighborhoods largely in Detroit and showed potential White homebuyers homes in White neighborhoods primarily in the east side suburbs of Detroit. Century 21 Town & Country's sales associates repeatedly showed more homes to White testers than to better qualified African-American testers because of race.  Defendants' agents also made discriminatory statements about African Americans and African-American communities based on race.

26.     The following examples are illustrative of Century 21 Town & Country's discriminatory housing practices against prospective homebuyers based on race:

(a)     A White tester telephoned Century 21 Town & Country to inquire about viewing a home located in Harper Woods listed by Century 21 Town & Country on the internet. The White tester was shown ten homes in Harper Woods in majority White census blocks. One week later, an African-American tester also telephoned the same office to inquire about a home in Harper Woods. The African-American tester was shown three homes in Detroit in majority African-American census blocks. The African-American tester was not shown any homes in Harper Woods.

(b)     An African-American tester telephoned Century 21 Town & Country to inquire about inspecting a home in St. Clair Shores listed by Century 21 Town & Country on the internet. The African-American tester was shown four homes in Detroit but was not shown any homes in St. Clair Shores, a predominately White town. The Century 21 Sales Associate, who is African-American, told the African-American tester that if "there are too many of us" the neighborhood goes down. The agent drove the African-American tester through a predominately White suburb and explained to the tester that the area was all White so "it of course costs more." Approximately a week and half later, a White tester telephoned the same Century 21 Town & Country office to inquire about viewing a home in St. Clair Shores listed by Century 21 Town & Country on the internet. The same sales associate showed the White tester five homes in St. Clair Shores, Harper Woods, Eastpointe and Detroit. The home in Detroit was located in a majority White census block. The agent told the White tester that a White neighborhood was

11

very orderly and that neighbors watched to make sure that their neighbors' lawns were cut and
their leaves were raked. She explained that African Americans did not like to be restricted by
order and did not want someone watching over them. She told the White tester that a more
integrated neighborhood was less expensive and so there were more African-American families.

27.     Century 21 Town & Country, one of the top-producing real estate firms in the
metropolitan Detroit market, does not have any sales offices located in predominantly African-
American neighborhoods or in the City of Detroit. Century 21 Town & Country has chosen to
place no sales offices in such neighborhoods, resulting in a low market penetration in African-
American neighborhoods. The intent and effect of Century 21 Town & Country's failure to
place offices in African-American neighborhoods is to deter African-Americans from seeking
assistance from Century 21 Town & Country and to avoid doing business with African-
Americans and in African-American neighborhoods.

28.     Century 21 Town & Country has failed to train adequately and instruct its agents,
including Edward A. Dallas, in anti-discrimination and fair housing and equal opportunity laws
and requirements, and in the benefits of assisting and serving African-American customers.
Century 21 Town & Country has failed to oversee adequately and supervise the actions and
practices of its agents, particularly their actions and practices in dealing with African-American
customers and customers in African-American neighborhoods.

29.     Century 21 Real Estate LLC has failed to adequately manage and oversee and
supervise the actions of its apparent agent, Century 21 Town & Country, or the sales associates
acting with apparent authority, including Edward A. Dallas.

12

30. On or about February 22, 2005, Kimberly Hobson-Hollowell contacted the Century 21 Town & Country Grosse Pointe office on Mack Avenue. The person at the service desk referred Mrs. Hollowell to Edward A. Dallas, a Sales Associate for Century 21 Town & Country. Mrs. Hollowell told Mr. Dallas that she and her husband, Darrick Hollowell, wanted Century 21 to help them sell the home they owned in Detroit and move to the Grosse Pointes. Mr. Dallas met with the Hollowells at their home in Detroit on or about February 25, 2005, to discuss the sale of their house and the purchase of a new home.

31. Although the Hollowells told Mr. Dallas on several occasions that they wanted to look at homes in each of the Grosse Pointes, Mr. Dallas repeatedly urged the Hollowells to look at homes in Harper Woods. Mr. Dallas was persistent in advising the Hollowells to consider Harper Woods, and successfully persuaded the Hollowells to look at homes for sale in Harper Woods.

32. Mr. Dallas showed the Hollowells three homes for sale, all of which were located in Harper Woods. He did not give the Hollowells an opportunity to see homes for sale in any of the Grosse Pointes neighborhoods. The Hollowells specifically asked to see a home for sale located at 1681 Hollywood Avenue in Grosse Pointe Woods, but Mr. Dallas refused to show the Hollowells the home. On or about June 30, 2005, the Hollowells purchased a home on Danbury Lane in Harper Woods, Michigan. Mr. Dallas assisted with the closing on that home as well as the sale of the Hollowells' house in Detroit.

33. Mr. Dallas discouraged the Hollowells from viewing homes for sale in the Grosse Pointes, which are predominantly White, on the basis of race. Instead, Mr. Dallas insisted on

13

showing the Hollowells homes in Harper Woods, an area that has a significantly larger (4-5 times) concentration and population of African Americans than the Grosse Pointes. Mr. Dallas did not identify or offer to show the Hollowells any homes for sale in majority White neighborhoods and denied the Hollowells' request to view a home in a majority White neighborhood. Mr. Dallas knowingly limited the information about suitably priced homes available for sale based on race and limited the Hollowells' housing choices on the basis of race, in violation of the Hollowells' civil rights.

34.     The Defendants' continuing practice of steering homeseekers on the basis of race adversely affects the Hollowells' property value and deprives the Hollowells of the benefits of living in an integrated community.

35.     The Defendants engaged in unlawful racial steering, discriminated against the Hollowells in the terms or conditions of the sale of a dwelling or in the provision of services in connection with the sale of a dwelling based on race, discriminated against the Hollowells in the terms or conditions of making a residential real estate transaction available because of race, otherwise made housing unavailable because of race, and denied the Hollowells the same right to make and enforce contracts and own property as enjoyed by White citizens of the United States.

### D. CENTURY 21'S CONTROL OF AND RESPONSIBILITY
### FOR ITS SALES ASSOCIATES

36.     Upon information and belief, Century 21 Town & Country's sales associates, including Edward A. Dallas, are exclusive agents of Century 21 Town & Country, meaning that the Defendant's sales associates sell real estate for Century 21 Town & Country only. Century

14

21 Town & Country directs and controls the activities of its sales associates with respect to the sale of real estate. Century 21 Town & Country holds these sales associates out to the public as agents and representatives of Century 21 Town & Country. When customers telephone Century 21 Town & Country, they are referred to a sales associate for assistance in viewing homes for sale. When selling or attempting to sell homes for Century 21 Town & Country, the sales associates are required by Century 21 Town & Country to utilize and apply its policies and guidelines.

37.     At all times relevant to the events described herein, all agents, sales associates and employees of Century 21 Town & Country, including Edward A. Dallas, acted within the scope of their employment as agents, employees, sales associates, and/or representatives of Century 21 Town & Country and Century 21 Real Estate LLC. All agents, sales associates, and employees carried out the discriminatory practices described herein (a) at the direction of, and with the consent, encouragement, knowledge and ratification of Century 21 Town & Country and Century 21 Real Estate LLC, and/or (b) under Century 21 Town & Country's and Century 21 Real Estate LLC's authority, control, and supervision; and/or (c) with the actual or apparent authority of Century 21 Town & Country and Century 21 Real Estate LLC.

E. INJURY CAUSED BY DEFENDANTS TO PLAINTIFFS
AND TO NEIGHBORHOODS WITHIN THE DETROIT METROPOLITAN AREA

*Injury to Neighborhoods within the Detroit Metropolitan Area*

38.     Defendants' ongoing discriminatory acts have caused substantial injury to Plaintiffs and to neighborhoods and communities within the Detroit Metropolitan Area, including

Detroit, Harper Woods and the Grosse Pointes.

39.     Defendants' policies and practices have contributed to the lack of integrated neighborhoods in the Detroit Metropolitan Area and perpetuated residential racial segregation throughout the Detroit Metropolitan Area, including Detroit, Harper Woods and the Grosse Pointes. Defendants' policies and practices have been inextricably intertwined with the underdevelopment of and under investment in African-American neighborhoods in the Detroit Metropolitan Area. The lack of integrated neighborhoods and racial segregation in the Detroit Metropolitan Area has resulted in:

(a)     abandoned homes in African-American neighborhoods in the Detroit Metropolitan Area caused by White flight to the suburbs, resulting in the evaporation of millions of dollars in real estate value in African-American neighborhoods;

(b)     reduced demand for homes in African-American neighborhoods in the Detroit Metropolitan Area, causing housing prices in those neighborhoods to fall and resulting in loss of future wealth for African Americans because African-American parents have less housing wealth to pass on to their children;

(c)     increased demand for homes in White neighborhoods in the suburbs of Detroit, resulting in inflated housing prices in White neighborhoods in the suburbs;

(d)     lack of quality, integrated public education in African-American neighborhoods in the Detroit Metropolitan Area;

(e)     less access to higher quality shops, foods, restaurants and fresh produce in African-American neighborhoods in the Detroit Metropolitan Area;

16

(f)    increased taxes for the costs of sewer, water and road projects in the suburbs of Detroit, while facilities and roads in Detroit are underused;

(g)    a decline in business investment in Detroit because of the lack of services, potential employees and related firms; and,

(h)    lack of quality health care in Detroit and increased health risks to African Americans in Detroit.

40.    Defendants' policies and practices perpetuate segregated schools and create demand for homes near certain schools and in certain school districts by creating a market for those homes among White home buyers, increasing the demand in certain majority White schools and school districts, and decreasing demand in certain predominately minority schools and school districts.

41.    By discouraging African-American homeseekers from purchasing homes in White neighborhoods, such as the Grosse Pointes, Defendants are depriving the prospective homebuyers and homeowners in those neighborhoods of the benefits of living in an integrated community.  Likewise, Defendants are depriving prospective buyers who are White and homeowners in African-American neighborhoods of the benefits of living in an integrated community.

*Injury to Plaintiffs*

42.    NFHA engages in and continues to engage in the following activities and services throughout the United States including the Detroit Metropolitan Area.  These activities include but are not limited to:

17

(a)     expanding equal housing opportunities;

(b)     furthering the Congressional purpose of eliminating segregated housing patterns and replacing them with truly integrated communities throughout the United States;

(c)     providing counseling and referral services to the public with respect to discriminatory housing practices;

(d)     educating the public about housing discrimination laws, discriminatory housing practices, and the availability of legal remedies for such discriminatory practices;

(e)     educating the real estate industry about housing discrimination and working with real estate organizations on voluntary compliance programs;

(f)     promoting racial and ethnic integration and furthering compliance with fair housing laws;

(g)     working with community groups to stabilize neighborhoods, through grant and loan programs, counseling and education;

(h)     educating the public and the real estate industry regarding discrimination in housing through national, regional and local media campaigns; and,

(i)     consulting with housing, lending, and insurance providers to comply with fair housing laws and promote residential integration.

43.     As a result of Defendants' discriminatory policies and practices, as alleged above, NFHA has been damaged by having to divert scarce resources to identify and counteract such discriminatory policies and practices – resources that could have been used to provide the activities and services identified in the paragraph above.

44.     To counteract the effects of Defendants' unlawful acts and practices, NFHA has been required to, among other things, devote time, resources, and money towards efforts to educate not only past, present and prospective homebuyers but also the real estate industry and the public that discrimination in residential real estate sales is illegal.

45.     As a result of Defendants' discriminatory policies and practices, NFHA has been substantially injured and frustrated in its mission to eradicate discrimination in housing and real estate sales, eliminate segregation in housing and in its efforts to carry out the programs and services that it provides, including but not limited to encouraging integrated living patterns, educating the public and the real estate industry about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons affected by discriminatory housing practices and eliminating discriminatory housing practices.

46.     NFHA, along with the members and constituents whose interests it represents, has suffered from the segregated neighborhoods and lack of integrated living patterns that have been perpetuated in Metropolitan Detroit. One of NFHA's goals is the elimination of segregation in housing and its effects upon communities and implementing the Congressional purpose of the Fair Housing Act to replace segregated neighborhoods with truly integrated communities. In furtherance of this goal, NFHA has launched educational campaigns to address segregation in housing and real estate steering. NFHA's educational campaigns have targeted the Detroit Metropolitan Area since 1991. NFHA's educational campaigns regarding segregation and racial steering have been impaired by the Defendants' discrimination.

19

47.     As a result of the Defendants' racially discriminatory actions, the Hollowells have each suffered, and continue to suffer, significant and irreparable loss and injury, including but not limited to social and economic loss, embarrassment, shame, humiliation, anger, fear, sadness, anxiety, and emotional distress. Their enjoyment of their home has been diminished by the loss of benefits of living in an integrated neighborhood and the stigma of racial discrimination and fears about the effects of segregation on the value of their investment, the quality of their community, and their access to quality education.

48.     On July 25, 2005, NFHA filed a Housing Discrimination Complaint against Defendant Century 21 Town & Country with HUD and the Michigan Department of Civil Rights alleging that Century 21 Town & Country discriminates against African-American and White homebuyers and prospective homebuyers through steering and other discriminatory housing practices.  The administrative complaints allege that Century 21 Town & Country's discriminatory acts constitute a continuing violation of the Fair Housing Act and Michigan fair housing laws.  HUD referred the case to the Michigan Department of Civil Rights for investigation.  Efforts to conciliate the administrative complaints have not been successful.  On January 19, 2007, the Michigan Department of Civil Rights issued a charge of discrimination.

49.     On April 5, 2006, Darrick and Kimberly Hollowell filed a Housing Discrimination Complaint with the U.S. Department of Housing and Urban Development ("HUD"), alleging that Century 21 Town & Country and Edward A. Dallas discriminate against African Americans and engage in racial steering.  The HUD Complaint alleges that the discriminatory acts constitute a continuing violation of the Fair Housing Act.  The Amended

Complaint added claims on behalf of the couple's three minor children. Efforts to mediate the HUD Complaint have not been successful.

50.     By the actions described above, Defendants have engaged in, and continue to engage in a pattern or practice of discrimination against African-American and White prospective homebuyers and homeseekers because of race in violation of the Fair Housing Act. The Defendants continue to engage in such a pattern, practice or policy of discrimination so as to constitute a continuing violation.

51.     The past and continuing acts and conduct of Defendants, described above, are intentional, malicious, and have been carried out with callous and reckless disregard for the federally protected rights of Plaintiffs and the individuals served by NFHA. Plaintiffs therefore are entitled to punitive damages.

52.     There now exists an actual controversy between the parties regarding Defendants' duties under the federal and state civil rights laws. Plaintiffs accordingly are entitled to declaratory relief.

53.     Defendants, unless enjoined, will continue to engage in the unlawful acts and the pattern or practice of discrimination and unlawful conduct described above. Plaintiffs have no adequate remedy at law. Plaintiffs now are suffering and will continue to suffer irreparable injury from Defendants' acts and unlawful conduct unless relief is provided by this Court. Plaintiffs thus are entitled to permanent injunctive relief.

## V. CLAIMS FOR RELIEF

### Count One
### Unlawful Discrimination Under the Federal Fair Housing Act
(All Plaintiffs)

54.     Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs, as if fully set forth herein.

55.     Defendants have injured Plaintiffs in violation of the federal Fair Housing Act by committing the following discriminatory housing practices:

a.      Refusing to sell, refusing to negotiate for the sale of, or otherwise making unavailable or denying dwellings because of race, in violation of 42 U.S.C. §3604(a);

b.      Discriminating in the terms, conditions, or privileges of the sale of a dwelling or in the provision of services in connection therewith because of race, in violation of 42 U.S.C. §3604(b);

c.      Making, printing or publishing statements with respect to the sale of a dwelling that indicates any preference, limitation or discrimination based on race, in violation of 42 U.S.C. § 3604(c);

d.      Discriminating in making a residential real estate transaction available or in the terms or conditions of making such a transaction available because of race, in violation of 42 U.S.C. § 3605;

e.      Restricting or attempting to restrict choices by word or by conduct in connection

22

with the seeking, negotiating for or buying of a dwelling so as to perpetuate or tend to perpetuate segregated housing patterns or to discourage or obstruct choices in a community or neighborhood because of race in violation of 24 C.F.R. § 100.70;

f.      Engaging in any conduct relating to the provision of housing that otherwise makes unavailable or denies housing because of race, in violation of 24 C.F.R. §100.70(b);

g.      Discouraging from inspecting or purchasing a dwelling because of race or because of the race of persons in a community or neighborhood, in violation of 24 C.F.R. § 100.70(c)(1);

h.      Discouraging the purchase of a dwelling because of race by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling, a community or neighborhood, in violation of 24 C.F.R. § 100.70(c)(1);

i.      Communicating to any prospective purchaser that he or she would not be comfortable or compatible with existing residents of a community or neighborhood because of race, in violation of 24 C.F.R. § 100.70(c)(1);

j.      Limiting information, by word or conduct, regarding suitably priced dwellings available for inspection or sale, because of race, in violation of 24 C.F.R. § 100.80(b)(4); and,

k.      Discriminating in making available selling or brokering services or in the

23

performance of such services because of race, in violation of 24 C.F.R. §

100.135.

## Count Two
### Unlawful Discrimination Under 42 U.S.C. § 1981
(The Hollowells)

56.     Plaintiffs reallege and incorporate by reference the above paragraphs, as if fully set forth herein.

57.     By the actions described above, Defendants have denied the Hollowells the same right to make and enforce contracts as is enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1981.

58.     As a result of the continuing discriminatory practices of the Defendants, the Hollowells were wrongfully denied access to housing.  Also as a result, the Hollowells have suffered, and continue to suffer, significant and irreparable loss and injury, including but not limited to social and economic loss, stigma, humiliation, embarrassment, emotional distress, deprivation of their right to contract for and obtain housing and housing-related services on the same basis as Whites, and the loss of benefits of living in an integrated neighborhood.

## Count Three
### Unlawful Discrimination Under 42 U.S.C. § 1982
(The Hollowells)

59.     Plaintiffs reallege and incorporate by reference the above paragraphs, as if fully set forth herein.

60.     By the actions described above, Defendants have denied the Hollowells the same right as is enjoyed by White citizens to purchase real property, in violation of 42 U.S.C. § 1982.

61.     As a result of the continuing discriminatory practices of the Defendants, the Hollowells were wrongfully denied access to housing and have suffered, and continue to suffer, significant and irreparable loss and injury, including but not limited to social and economic loss, stigma, humiliation, embarrassment, emotional distress, deprivation of their right to purchase real property on the same basis as Whites, and the loss of benefits of living in an integrated neighborhood.

## VI.  DEMAND FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

a.     That the Court declare that Defendants have violated the provisions of applicable federal law;

b.     That the Court permanently enjoin all unlawful practices alleged in this Complaint and impose injunctive relief prohibiting Defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, from violating the unlawful practices alleged herein;

c.     That the Court order Defendants to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in by them or their agents again;

d.     That the Court award compensatory and punitive damages to Plaintiffs according to proof;

e.     That the Court should award Plaintiffs their reasonable attorneys' fees and costs; and,

Dated: January **24**, 2007.

STEPHEN M. DANE
RELMAN & ASSOCIATES PLLC
1225 19th Street NW
Suite 600
Washington DC 20036-2456
(202) 728-1888

312 Louisiana Avenue
Perrysburg, Ohio 43551
(419) 873-1814

By _____

STEPHEN M. DANE
D. SCOTT CHANG
GLENN SCHLACTUS
ANITA KHANDELWAL
Attorneys for Plaintiff
National Fair Housing Alliance

BETH A. WILSON (P58168)
BRAD F. HUBBELL (P65455)
COOPER & WALINSKI, L. P. A.
900 Adams Street
Toledo, OH 43604
(419) 241-1200

By _____

BETH A. WILSON
BRAD F. HUBBELL
Attorneys for Plaintiffs
Kimberly Hobson-Hollowell and
Darrick Hollowell, individually and on
behalf of their three minor children

26

## VII.  DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Dated: January **24**, 2007.

STEPHEN M. DANE
RELMAN & ASSOCIATES
1225 19th Street NW
Suite 600
Washington DC 20036-2456
(202) 728-1888

312 Louisiana Avenue
Perrysburg, Ohio 43551
(419) 873-1814

By _____
STEPHEN M. DANE
D. SCOTT CHANG
GLENN SCHLACTUS
ANITA KHANDELWAL
Attorneys for Plaintiff
National Fair Housing Alliance

BETH A. WILSON (P58168)
BRAD F. HUBBELL (P65455)
COOPER & WALINSKI, L. P. A.
900 Adams Street
Toledo, OH 43604
(419) 241-1200

By _____
BETH A. WILSON
BRAD F. HUBBELL
Attorneys for Plaintiffs
Kimberly Hobson-Hollowell and
Darrick Hollowell, individually and on
behalf of their three minor children

27

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
National Fair Housing Alliance,
Hobson-Hollowell, Kimberly and Hollowell, Darrick

## DEFENDANTS
Town & Country - Sterling Heights, Inc.
Century 21 Real Estate LLC
Edward A. Dallas

**(b)** County of Residence of First Listed Plaintiff   Washington, D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Oakland County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
(see attachment)

Att

Case: 4:07-cv-10385
Assigned To: Gadola, Paul V
Referral Judge: Scheer, Donald A
Filed: 01-24-2007 At 02:06 PM
CMP NATIONAL FAIR HOUSING ALLIANCE
INC V KIMBERLY HOBSON-HOLLOWELL, ET AL (EW)

## II. BASIS OF JURISDICTION (Select One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZ...
(For Di...

|  | | |
|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | ...corporated or... of Business In This State |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Select One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 3601, et seq.; 42 U.S.C. §§ 1981 and 1982

Brief description of cause:
Housing discrimination on the basis of race, in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
January 24, 2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

SUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　　Other than stated above, are there any pending or previously
　　　　　discontinued or dismissed companion cases in this or any other　☐ Yes
　　　　　court, including state court? (Companion cases are matters in which　☑ No
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

**Attorney Listing Attachment:**

STEPHEN M. DANE
D. SCOTT CHANG
GLENN SCHLACTUS
ANITA KHANDELWAL
Relman & Associates
1225 19th Street, NW, Suite 600
Washington, DC 20036
Phone: 202-728-1888
Attorneys for Plaintiff
National Fair Housing Alliance

BETH A. WILSON (P58168)
BRAD F. HUBBELL (P65455)
Cooper & Walinski, L. P. A.
900 Adams Street
Toledo, OH 43604
Phone: (419) 241-1200
Attorneys for Plaintiffs
Kimberly Hobson-Hollowell and
Darrick Hollowell, individually
and on behalf of their three minor children

PURSUANT TO LOCAL RULE 3.1

☐ YES    ☒ NO

1. Is this a case that has been previously discontinued or dismissed?

    If **yes**, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court?   (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ YES    ☒ NO

    If **yes**, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

Notes: