UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL FAIR HOUSING
ALLIANCE, et al.,

        Plaintiffs,

v.

TOWN AND COUNTRY -
STERLING HEIGHTS, INC., et al.,

        Defendants.
_____/

CIVIL ACTION NO. 07-10385

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

I recommend that the Motion to Dismiss Counterclaims be: (a) granted as to Count I; (b) denied as to Count II; (c) denied as to Counts III and IV to the extent that they are based upon the declarations of Shanna Smith and the publications depicted in Exhibits A, E and F to the Counterclaim; and (d) granted as to Counts III and IV with regard to publications depicted in Exhibit G to the Counterclaim.

**II.**    **REPORT**:

    **A.**    **Procedural History**

The Complaint in this action was filed on January 24, 2007. Defendants Dallas and Town and County-Sterling Heights, Inc., filed their Answer on February 26, 2007. On the same date, Town and County-Sterling Heights, Inc. filed its Counterclaim against National Fair Housing Alliance, Inc. On March 19, 2007, National Fair Housing Alliance, Inc. filed its Motion to Dismiss Defendant Town and Country-Sterling Heights, Inc.'s Counterclaims. Town and County-Sterling Heights, Inc. filed its Response on April 12, 2007, and National

Fair Housing Alliance, Inc. filed a Reply Brief on April 23, 2007. The parties appeared for hearing of the motion on April 23, 2008.

### B. Applicable Law and Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a pleading must be dismissed if it fails to state a claim upon which relief may be granted. A claim for relief need not contain detailed factual allegations. Nonetheless, a pleader's obligation to provide the "grounds" of his entitlement to relief, as required by Fed.R.Civ.P. 8(a)(2), requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Rather, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that the allegations are true. <u>Bell Atlantic Corporation v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). The pleading must contain something more than a statement of facts which creates a mere suspicion of a legally cognizable right of action. The court should proceed on the assumption that all the allegations of the complaint are true. A well pleaded claim may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not countenance dismissal based on a judge's disbelief of the pleader's factual allegations. <u>Id.</u>

### C. Factual Background

National Fair Housing Alliance, Inc. ("NFHA") is a national non-profit organization whose purpose is to eliminate housing discrimination and to ensure equal housing opportunities. Town and County-Sterling Heights, Inc. is a real estate firm which conducts business in the Detroit metropolitan area. Pursuant to a grant of funds from the Department of Housing and Urban Development ("HUD"), NFHA conducted testing in the

2

Detroit area for the purpose of identifying discriminatory practices. Based upon its testing efforts, NFHA concluded that Town and Country had engaged in discriminatory practices, including "racial steering," by which minority purchasers were induced to purchase homes in racially mixed areas, as opposed to predominantly white neighborhoods. NFHA filed an administrative charge with HUD. The case was transferred to the Michigan Department of Civil Rights ("MDCR"), pursuant to a contract between that agency and HUD. During the pendency of those proceedings, NFHA agents released public statements pertaining to Town and Country's alleged violations. Efforts to resolve the dispute administratively were unsuccessful and NFHA filed this action in January 2007.

Town and Country filed a counterclaim against NFHA. NFHA responded with the instant Motion to Dismiss.

### D. <u>Analysis</u>

**Count I - Equal Protection Claim**

Town and County alleges in its counterclaim that NFHA violated its federal due process rights, and has asserted a claim under §1983 of Title 42 of the U.S. Code. That statute authorizes private parties to enforce their rights under the federal Constitution and laws against defendants who acted under color of state law. Section 1983 is only triggered by state action. See <u>Lansing v. City of Memphis</u>, 202 F.3d 821, 828 (6th Cir. 2000). It is undisputed that NFHA is a private non-profit organization. As a general matter, there is no constitutional right to be free from harm inflicted by private parties. The due process clause provides no protection against the conduct of private actors, absent circumstances rendering the offensive conduct "fairly attributable to the state." <u>Lindel-Baker v. Kohn</u>, 457

U.S. 830, 838 (1982); Simescu v. Emmet Department of Social Services, 942 F.2d 372, 374 (6th Cir. 1991). NFHA moves to dismiss the §1983 claim on the theory that Town and Country has failed to allege facts constituting the requisite state action.

The Supreme Court has articulated a number of tests to determine whether challenged conduct may be fairly attributable to the state so as to render a private actor liable under §1983. Town and Country maintains that NFHA's actions, as alleged in the counterclaim, satisfy two of those tests: the "public function test," and the "joint action test."

The public function test is satisfied when a private entity exercises powers which are traditionally reserved exclusively to the state. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Typical examples of such functions are the holding of elections and the exercise of the power of eminent domain. It has often been emphasized that the public function test is a highly demanding standard. "While many functions may be historically and traditionally governmental functions, few are 'exclusively' governmental functions." Schwartz & Urbonya Section 1983 litigation, 2nd Edition, Federal Judicial Center 2008, page 89. I am satisfied that the standard is not met in this case. Enforcement of civil rights laws through litigation has not traditionally been reserved exclusively to the state. Indeed, most civil rights statutes expressly provide for their enforcement through private civil actions by individual beneficiaries whose rights are allegedly infringed. NFHA is a private entity which pursues such relief on behalf of others, under a contract with the federal Department of Housing and Urban Development ("HUD"). Among the actions undertaken by it in pursuit of its mission is the filing of actions before administrative bodies and in the courts, both state and federal. As a general rule, "a private party's mere use of the state's dispute resolution machinery, without the 'overt' significant assistance of state officials cannot [be

4

considered state action]." Tahfs v. Proctor, 316 F.3d 584, 591 (6th Cir. 2003) (citing American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 54 (1999)). I am satisfied that the public function test is not met in this instance.

Town and Country offers the alternative argument that the actions of NFHA satisfy the joint action test employed by the Supreme Court in Lugar v. Edmondson Oil. (See Town & Country Response Brief, page 7). In that case, the Supreme Court held that a private creditor acting jointly with a state official in effecting a prejudgment attachment of a debtor's property under state law was acting "under color" of law for purposes of §1983. The Court's discussion of its holdings in prior cases revealed that it had "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." 457 U.S. at 941. In a footnote, the court noted that its holding "is limited to the particular context of prejudgment attachment." 457 U.S. at 939, n. 21.

The Supreme Court has more recently addressed the "entwinement" of private and public actions as a basis of private party liability under §1983. In Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001), the Court held in a 5-4 decision that a private, not-for-profit membership corporation organized to regulate interscholastic sports among public and private high schools had engaged in "state action" for purposes of the Fourteenth Amendment in promulgating rules governing the recruitment of student athletes. The Court held that such conduct constituted action "under color of state law" within the meaning of §1983. Writing for the majority, Justice Souter acknowledged the difficulty of the "necessarily fact bound inquiry" essential to determining whether private action is fairly attributable to the state.

> Our cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not. The judicial obligation is not only to 'preserv[e] an area of individual freedom by limiting the reach of federal law' and avoi[d] the imposition of responsibility on a state for conduct it could not control, but also to assure that constitutional standards are invoked 'when it can be said that the state is *responsible* for the specific conduct of which the plaintiff complains . . .. If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a simple line between states and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a state had caused it to be performed. Thus we say that state action may be found if, though only if, there is such a 'close nexus between the state and the challenged action' that seemingly private behavior 'may be fairly treated as that of the state itself.'

531 U.S. at 295 (citations omitted). The Court concluded that what is fairly attributable to a state was a normative judgment without simple, rigid criteria. "From the range of circumstances that could point toward the state behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for their may be countervailing reason against attributing activity to the government." Id., at 295-96. (Citations omitted).

In finding that the private association acted under color of law in Brentwood, the slim majority of the Court seized upon the facts that: a) the vast majority of the member institutions were public schools; b) those public schools were represented by employees acting in their official capacity to provide an integral element of secondary public schooling; c) public school officials overwhelmingly performed all but the purely ministerial acts by which the association existed and functioned in practical terms; d) state board members were assigned ex-officio to serve as members of the board of control and legislative

6

counsel of the association; and e) the association's ministerial employees were treated as state employees to the extent of being eligible for membership in the state retirement system. 531 U.S. at 299-300. Based on those facts, the court determined that the "[e]ntwinement [would] support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards . . .." Id. at 302.

The counterclaim in the case at bar alleges no facts which would support a conclusion that NFHA has undertaken "state action" with regard to Town and Country. On the contrary, Town and Country acknowledges that NFHA acted pursuant to a contract with the federal Department of Housing and Urban Development ("HUD"). (Counterclaim, Paragraphs 3, 19). It is further alleged that the Counter-Defendant filed a Complaint with HUD, in July 2005, which was then referred to the Michigan Department of Civil Rights ("MDCR") pursuant to an agreement between HUD and MDCR. (Counterclaim, Paragraph 29). Those assertions simply do not support Town and Country's conclusory allegation that NFHA was acting under color of state law. (Counterclaim, Paragraph 37). When a pleading fails to provide more than bare allegations of state action, the proper course is to dismiss the case for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Tahfs, 316 F.3d at 596. At oral argument, Town and Country's counsel maintained that NFHA and MDCR conducted a joint news conference concerning his client, and that they may have shared documents and the services of an intern. Even if such assertions were properly pled, they could not demonstrate the pervasive entanglement necessary to "support a conclusion that a private organization ought to be charged with a public character," as required by Brentwood.

In apparent anticipation of this conclusion, Town and Country asserts that it is still possible that further facts could be learned in discovery showing even closer ties between NFHA and MDCR. (Response Brief, Page 9). That assertion, however, is pure speculation. Fed.R.Civ.P. 8(a) requires more. A claim for relief must contain factual allegations sufficient to "raise a right to relief above the speculative level," on the assumption that the allegations are true. Bell Atlantic Corp. v. Twomby, 127 S.Ct. 1955, 1964-65 (2007). Town and Country has simply failed to allege facts sufficient to establish state action on the part of NFHA.

Finally, Town and Country argues that it should be allowed to amend its counterclaim to include a claim under Bivens[1] against NFHA President and Chief Executive Officer, Shanna Smith, individually. Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001) is cited for the proposition that a Bivens action may be brought against private individuals. As correctly observed by NFHA in its Reply Brief, however, the Malesko decision expressly provided that "whether a Bivens action might lie against a private individual" was not a question presented in that case. 534 U.S. at 65. As Town and Country has neither sought concurrence for its proposed amendment, nor filed a formal motion, nor submitted a specific proposed claim under Bivens, nor provided authority establishing the propriety of such a claim, the court should not address the issue at this time. Count I of the Counterclaim should be dismissed.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**Count II - Abuse of Process Claim**

Count II of Town and Country's counterclaim asserts an abuse of process claim. It is alleged that NFHA engaged in the improper use of process in the prosecution of an action against Town and Country before the Michigan Department of Civil Rights by launching a "media blitz" against Town and Country before legitimately investigating the issues and following up with officers of the company. Count II further alleges that NFHA pursued an ulterior purpose in filing the MDCR charge and this lawsuit against Town and Country. It is alleged that the Counter-Defendant attempted to negotiate dismissal of the administrative charges in exchange for Town and Country's agreement to pay NFHA to perform training and other services. Town and Country maintains that, while NFHA's putative purpose in filing suit was to end housing discrimination, it actually instituted a frivolous enforcement action against Town and Country for the true purpose of extorting money from the company for NFHA's own benefit.

NFHA seeks dismissal of Count II on the grounds that Town and Country has failed: a) to allege a "legally improper motive"; b) failed to allege acts corroborating the improper motive; and c) failed to allege an improper act in the use of process.

Under Michigan law, a party claiming abuse of process must plead both (1) an ulterior motive outside of the intended purpose of the litigation, and (2) an act that is improper in the regular prosecution of the proceeding. Friedman v. Dozorc, 412 Mich. 1 (1981); Direct TV v. Zink, 286 F.Supp. 2nd 873, 875-76 (E.D. Mich. 2003). The ulterior purpose should be collateral to the lawsuit, and not a direct goal of the action. Young v. Motor City Apartments Ltd. Dividend Housing Ass'n No. 1 and No. 2, 133 Mich.App. 671, 681-82 (1984). The ulterior purpose must be demonstrated by alleging a corroborating act

that demonstrates the improper motive. Direct TV, 286 F.Supp. 2nd at 875-76. NFHA maintains that the mere seeking of damages and injunctive relief through a lawsuit is a legitimate use of process. It further argues that, if the ulterior objectives alleged are "similar to those sought in the lawsuits," an abuse of process claim is not established.

In Young v. Motor City Apartments, the Michigan Court of Appeals held that a party seeking to recover on a theory of abuse of process must plead and prove both an ulterior purpose and an act in the use of process that is improper in the regular prosecution of the proceeding. The court relied upon the opinion of the Michigan Supreme Court in Friedman v. Dozorc, 412 Mich. 1 (1981).

> It is not enough that the actor have an ulterior motive in using the process of the court. It must further appear that he did something in the use of the process outside of the purpose for which it was intended.
>
>      *     *     *
>
> Everyone has a right to use the machinery of the law, and bad motive does not defeat that right. There must be a further act done outside the use of process - a perversion of the process. If he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process.

Young, supra, at 682 (quoting from Hauser v. Bartow, 273 N.Y. 370, 374 (1937). (Citations omitted).

Town and Country's relies upon the holding of the Michigan Court of Appeals in Three Lakes Association v. Whiting, 75 Mich.App. 564 (1977). That case also recognized that both an ulterior purpose and an act in the use of process not proper in the regular prosecution of a proceeding are required to state a claim for abusive process. The plaintiffs in Three Lakes claimed that the defendants offered to dismiss a lawsuit without receiving

10

any damages if plaintiff would agree not to express opposition to, or otherwise oppose, defendants' proposed (and totally unrelated) condominium project. The court held that those proposed terms constituted an improper use of process in support of defendants' ulterior and collateral purpose of overcoming resistence to its condominium project.

The Young and Friedman cases, upon which NFHA relies involved no allegation of conduct beyond the defendant's filing of a complaint (Friedman) and the vigorous pursuit of discovery procedures and trial tactics (Young), all of which were deemed to be consistent with the "zealous representation of claims that is inherent in our adversary system and which is properly governed by the Michigan court rules." Young, 133 Mich.App. at 682. The Young court explicitly observed that the record in that case did not "reveal any act by the defendants outside of the formal use of process to extort or otherwise oppress plaintiffs." Id.

In my view, the case at bar presents a very close question. Viewing Count II of the counterclaim liberally, it appears that the essence of the claim is that NFHA instituted legal action against Town and Country for an improper motive (i.e. its own enrichment). Settlement offers in the course of litigation are clearly within the range of customary activities consistent with the process of litigation. On the other hand, an effort by a party who initiates litigation in a representative capacity for the primary purpose of enriching itself by employing the leverage of its beneficiaries' legal and equitable claims could, in my view, constitute an irregular act concerning an ulterior purpose for the litigation. Count II of the counterclaim accuses NFHA of instituting litigation against Town and Country for the primary purpose of its own financial gain, rather than the vindication of other's civil rights. At the dismissal stage, this court must proceed on the assumption that the allegations of

the claim are true. All that is necessary to withstand dismissal is that the factual allegations be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). That the court is doubtful of a claimant's ultimate success is of no moment. A well pleaded claim may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not countenance dismissal based on a judge's disbelief of the plaintiff's factual allegations. Id. On that basis, I recommend that the Motion to Dismiss Count II of the counterclaim be denied. If the evidence fails to support Town and Country's claim, the issue can be re-visited on a Motion for Summary Judgment.

## Count III - Defamation Claim

In Count III, Town and Country asserts a defamation claim. The count incorporates the allegation in Paragraph 24 that NFHA President Shanna Smith defamed Town and Country by stating, "among other things," that Town and Country was the "worst [she had] ever seen when it comes to discriminatory practices." Town and Country also alleges that NFHA "made false statements" regarding it, and makes specific reference to Exhibits E-G of its pleading. Count III further alleges that counter-defendant "mentioned Town and Country in its 2006 'Trends Report.'" (Counterclaim, Paragraph 25 and Exhibit A).

To state a claim for defamation, a party must allege (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by

12

the publication.  Stencel v. Augat Wiring Sys., 173 F.Supp. 2nd 669, 680 (E.D. Mich. 2001) (citing Gonyea v. Motor Parts Fed. Credit Union, 192 Mich.App. 74, 77 (1992).

It is alleged in this case that NFHA published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity. Town and Country maintains that the publications were not privileged; that they imputed a lack of integrity and criminal and/or quasi criminal conduct on the part of Town and Country; and that they resulted in a loss of business, profits and reputation. (Counterclaim, Paragraph 24, 25, 49-57).

NFHA argues initially, and correctly, that "expressions of opinion are protected from defamation actions" under Michigan law.  NFHA cites Lakeshore Comty. Hosp., Inc. v. Perry, 212 Mich.App. 396, 402 (1995).  That case recognized that the United States Supreme Court has held expressions of opinion to be protected under the First Amendment from defamation actions.  Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974).  "Thus, in cases where statements reasonably cannot be interpreted as stating actual facts about an individual, those statements are protected under the First Amendment.  Lakeshore, 212 Mich.App. at 402 (citing Garvelink v. Detroit News, 206 Mich.App. 604, 609 (1994)).  The movant argues that statements by NFHA executive Shanna Smith that "the Century 21 Town and Country office in Grosse Pointe is among the worst she's seen when it comes to discriminatory housing practices" is incapable of objective verification, and is thus a constitutionally protected statement of subjective opinion.

Town and Country responds that Smith, as President of NFHA, could reasonably be held to have spoken from experience and first hand knowledge derived from her background in fair housing disputes.  I am satisfied that the resolution of the question

13

raised in the instant motion depends upon an examination of the full context of the accused statements. While it is true that the question of whether a privilege exists which would immunize a libel defendant from liability is a question of law, <u>Koniak v. Heritage Newspapers, Inc.</u>, 190 Mich.App. 516, 520 (1991), the facts of the particular case are not insignificant to the correct determination. Where the facts pleaded raise a claim for relief above the level of speculation, dismissal is not appropriate and discovery should proceed. I find it significant that the cases upon which NFHA relies viewed the critical declarations in full context. I am persuaded that this court should do the same. The counterclaim should withstand a Motion to Dismiss because the factual allegations are sufficient to "raise a right to relief beyond the speculative level," on the assumption that the allegations are true. <u>Bell Atlantic Corp. v. Twomby</u>, 127 S.Ct. 1955 (2007). Town and Country should be permitted to pursue discovery. If, after all relevant facts have been assembled, no reasonable fact finder could conclude otherwise than that Smith's statements were mere expressions of opinion, NFHA may renew its challenge by way of a motion for summary judgment.

Count III of the counterclaim also asserts a claim for defamation based upon NFHA's April 5, 2006 publication of its *Trends Report* (Exhibit A to Counterclaim), a March 29, 2006 NFHA media advisory (<u>Id</u>., Exhibit F), and statements by NFHA agents to public media representatives in January 2007 (<u>Id</u>., Exhibit G). NFHA seeks dismissal of the claims based upon those publications, claiming that they fall within the ambit of a statutory privilege.

> Damages shall not be awarded in a libel action for the publication or broadcast of <u>a fair and true report of matters of public record</u>, a public and official proceeding, or of a

> governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true head note of the report. This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or an act or action of a public body, which was not part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.

MCL §600.2911(3) (emphasis added). NFHA maintains that the state and federal courts of Michigan have interpreted the privilege broadly. They cite Amway Corporation v. Proctor and Gamble Co., 346 F.3d 180 (6th Cir. 2003) for the proposition that a party's publication of any actual court filing or statement made in a judicial proceeding is privileged because the public has a legitimate interest in such information. The protection is not limited to verbatim repetitions of matters in the public record. Rather, it is sufficient if the information published "substantially represents the matters contained in the court records." K Mart Corp. v. Areeva Inc., 2005 WL 2290678 at *3 (citing Koniak v. Heritage Newspapers, Inc., 190 Mich.App. 516 (1991)).

Town and Country argues in response that Michigan's statutory Fair Reporting Privilege is inapplicable to the facts of this case. It observes, correctly, that the cases upon which NFHA relies involved statements relating to actual judicial proceedings. Those proceedings were clearly matters of public record. Town and Country notes language in Amway v. P.G. Company to the effect that "[t]he statute excepts from the privilege libels that are not part of the public and official proceeding or governmental notice, written record or record generally available to the public." 346 F.3d at 187. Three of the four publications

15

which are the subject of Count III of the counterclaim occurred prior to the filing of any court action relating to the subject matter addressed. The only proceeding then underway was a complaint lodged with HUD and later forwarded to the MDCR (see Exhibit H to Town and Country's Response Brief). Town and Country maintains that the administrative proceedings were not a matter of public record, and asserts that its own request for records of the MDCR records, under the Michigan Freedom of Information Act, was rejected. Exhibit J to the Response Brief is a copy of correspondence from the MDCR denying Town and Country's FOIA request, and stating the policy of the department "to routinely deny all requests for documents from open files" currently under investigation/review.

    I conclude that Town and Country has the stronger position. A primary purpose of administrative intervention, at both the federal and state levels, is the prompt initiation of conciliation efforts. At the federal level, 42 U.S.C. §3610(b) provides that such efforts begin with the filing of a complaint. Subsection (d) of the statute provides that nothing said or done in the course of conciliation may be made public. The Michigan Department of Civil Rights employs a similar scheme of conciliation, and the October 19, 2005 letter to Town and Country's attorneys evidences MDCR's policy of confidentiality with respect to its investigations. As enunciated in K Mart v. Areeva, the Michigan Fair Reporting Privilege protects fair and true reports of matters of public record, including non-verbatim accounts which substantially represent the matter contained in such records. The ruling is premised on the proposition that the publication does little to expand the adverse effect of a formal public assertion/allegation. Where the underlying assertion/allegation is not in the public realm, however, there is nothing upon which to "fairly report." Thus, the statutory provision relied upon by NFHA simply does not apply. Accordingly, I recommend that the Motion to

Dismiss be denied as to the Count III defamation claims based on Exhibits A, E and F to the Counterclaim, since those publications occurred prior to the filing of judicial proceedings on January 24, 2007 (Docket Entry #1).

Conversely, I recommend that NFHA's Motion to Dismiss be granted as to the Count III defamation claim based upon the publication depicted in Exhibit G to the Counterclaim. Exhibit G makes specific reference to the filing of this lawsuit on the previous day. No declaration attributed to NFHA or its agents expands significantly on the allegations in the lawsuit. I am satisfied that the accused statements "substantially represent[ ] the matters contained in the court records." I find that the Michigan Fair Reporting Privilege applies.

### Count IV - Tortious Interference Claim

Count IV of Town and Country's Counterclaim asserts that NFHA tortiously interfered with Town and Country's business relationships and expectancies. The claim is based upon the allegedly defamatory statements by NFHA agents, as alleged in Count III.

The elements of a claim for tortious interference with a business relationship are: (a) the existence of a valid business relationship or expectancy; (b) knowledge of the relationship or expectancy on the part of the interfering party; (c) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (d) resultant damage to the party whose relationship has been disrupted. Lakeshore Cmty Hosp. Inc. v. Perry, 212 Mich.App. 396 (1995).

The sole challenge by NFHA to Count IV is a repetition of its attack on the sufficiency of Town and Country's defamation claims in Count III. Accordingly, I conclude that the appropriate disposition is also the same. I recommend that the Motion to Dismiss

Count IV be denied as to the portions of that count based on the Smith declarations and the public pronouncements depicted in Exhibits A, E and F to the Counterclaim. I recommend that the Motion be granted as to the defamation claims based upon Exhibit G to the Counterclaim.

### III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The

response shall address specifically, and in the same order raised, each issue contained within the objections.

            s/Donald A. Scheer
            DONALD A. SCHEER
            UNITED STATES MAGISTRATE JUDGE

DATED: August 19, 2008

---

**CERTIFICATE OF SERVICE**

 I hereby certify on August 19, 2008, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this notice was mailed to the following non-registered ECF participants on August 19, 2008:

            s/Terri Hackman
            Secretary