UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL FAIR HOUSING ALLIANCE,
KIMBERLY HOBSON-HOLLOWELL, and
DARRICK HOLLOWELL,

Case No. 2:07-cv-10385

HONORABLE STEPHEN J. MURPHY, III

    Plaintiffs,

v.

TOWN & COUNTRY– STERLING
HEIGHTS d/b/a CENTURY 21 TOWN &
COUNTRY, CENTURY 21 REAL ESTATE
LLC, and EDWARD A. DALLAS,

    Defendants.
                                       /

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** (docket no. 90)

**INTRODUCTION AND FACTS**

      The plaintiffs in this suit under Title VIII of the federal Fair Housing Act (hereinafter "Title VIII"), 42 U.S.C. §§3601 *et seq.*, are a married couple and a private fair-housing organization. In their complaint they allege, among other things, that the defendantsm who are realtors operating in Southeast Michigan, as well as the realtor's franchisor, engaged in a continuous practice of "racial steering," by which the defendants deliberately directed black prospective homebuyers toward houses in predominantly black or integrated communities, and white prospective homebuyers toward white communities.

      The plaintiffs Kimberly Hobson-Hollowell and Darrick Hollowell (collectively, "the Hollowells") allege that they engaged the defendant Town & Country – Sterling Heights ("Town & Country") and its agent, defendant Edward A. Dallas, to help them find a new house in the Detroit area. The Hollowells allege that they told Mr. Dallas they were

interested in houses in the Grosse Pointes, a collection of predominantly white and relatively prestigious suburbs of Detroit known for their high-quality public schools. The Hollowells even asked to see a specific house in the area. Dallas, however, allegedly refused to show them or even identify a single house for sale in the Grosse Pointes, and instead showed them multiple houses in the nearby – but more integrated – suburb of Harper Woods, part of which is included in the Grosse Pointe school district. Eventually, the Hollowells did purchase a house in Harper Woods.

The other plaintiff is the National Fair Housing Alliance ("the NFHA"). The NFHA claims that it began investigating Town & Country after a "research audit" by the United States Department of Housing and Urban Development uncovered discriminatory housing practices at Town & Country. Compl., docket no. 1, at ¶ 23. Town & Country alleges that its investigation involved the use of a number of sets of "paired testers" – one black applicant and one white applicant who were similarly situated in most respects, except that the black applicant was slightly more qualified as a home buyer than the white one. The Complaint recounts the alleged experiences of several of these paired testers. In general, the allegations if true would indeed confirm that Town & Country consistently tries to steer its black customers to houses in black or integrated communities, and its white customers to houses in white areas. According to the allegations, Town & Country refused to show black testers houses in predominantly white neighborhoods even after the testers requested to see specific houses in those areas. White testers had the same experience when they requested to see houses in black or integrated neighborhoods. In the course of this "steering," at least one Town & Country employee allegedly expressed negative opinions about the effects of black residents on a neighborhood. *Id.* at ¶26(b).

All of this, the plaintiffs allege, is part and parcel of a broad pattern or practice of discrimination engaged in by Town & Country, which is intended to perpetuate racially segregated residential patterns in the communities it serves.  As a result of this pattern, the plaintiffs allege, residents of and homeowners in minority neighborhoods in the Detroit area have been subjected to a multitude of harms, including falling real estate prices, abandoned houses, low-quality school and health-care systems, and generalized commercial underinvested, including in particular fewer high-quality retail and grocery outlets.  Further, they allege that the residents of white neighborhoods have been subjected to artificially inflated property taxes to pay for the infrastructure required for a burgeoning population, and that all the residents of the Detroit area have been robbed of the benefits of living in racially integrated communities.

Based on the foregoing, the defendants claim that the plaintiffs are suing, in part, on a "pattern or practice" theory that is not available to private, non-class plaintiffs.  As a result, defendants have moved for partial judgment on the pleadings, with respect to the pattern-or-practice aspects of the complaint.  As will be explained, because the Court finds this contention to be mostly unripe for adjudication at this point, it will deny the better part of this motion, while granting the remainder.

**ANALYSIS**

I.  Judgment on the Pleadings– the Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings at any time after the pleadings are closed, so long as the motion is made early enough not to delay trial.  "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same . . . standard as motions to dismiss

pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F. 3d 291, 295 (6th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted). The Rule "do[es] not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson* , 355 U.S. 41, 47 (1957). This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atl. Corp.*, 127 S. Ct. at 1965. The Court will not, however, presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the Court will grant a motion for dismissal pursuant to Rule 12(b)(6),– or, similarly, a motion for judgment on the pleadings pursuant to Rule 12(c) – only in cases when there are simply not "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

II.  Title VIII Background Law

The Hollowells and the NFHA allege that defendants have violated a number of federal statutes and regulations, mainly by engaging in racial "steering" as described above. Among these statutes, 42 U.S.C. § 3604 provides that

> it shall be unlawful--
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling, because of race, color, religion, sex, familial status, or national origin.

4

> (b)To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

Additionally, 24 C.F.R. § 100.70 provides in part that:

> (a) [i]t shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.
> (b) . . . .
> (c) Prohibited actions under paragraph (a) of this section, which are generally referred to as unlawful steering practices, include, but are not limited to:
>> (1) Discouraging any person from inspecting, purchasing or renting a dwelling because of race, color, religion, sex, handicap, familial status, or national origin, or because of the race, color, religion, sex, handicap, familial status, or national origin of persons in a community, neighborhood or development.

The plaintiffs also assert their "steering" claims under 42 U.S.C. §§ 1981 and 1982, which respectively guarantee (among other things) the rights of racial minorities to make and enforce contracts, and to buy and sell real property. Racial steering housing-discrimination claims are cognizable under these statutes as well. *See, e.g., Sanders v. Dorris*, 873 F. 2d 938 (6th Cir. 1989).

In housing-discrimination cases such as this one, a plaintiff who is unable to produce direct evidence that a negative action against him or her was based on prohibited animus may nonetheless make out a cause of action under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *McDonnell Douglas* was an *employment* discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

5

§§ 2000e *et seq.* There, the Supreme Court held that a plaintiff claiming employment discrimination could make out a *prima facie* case

> by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802. This framework has been adopted with minimal modifications for use in housing-discrimination suits. Thus, in such suits

> [t]he courts have uniformly held that a plaintiff establishes a prima facie case under either 42 U.S.C. §§ 1981, 1982 or 42 U.S.C. § 3601 et seq. by proving:
> (1) That he or she is a member of a racial minority;
> (2) That he or she applied for and was qualified to rent or purchase certain property or housing;
> (3) That he or she was rejected;
> (4) That the housing or rental property remained available thereafter.

*Selden Apartments v. HUD*, 785 F. 2d 152, 159 (6th Cir. 1986). This test applies to racial steering claims in the same way as to other housing discrimination claims.[1] *See Patterson v. Guttman,* No. 98-4538, 2000 WL 799320, at *5 (6th Cir. June 5, 2000).

B. The Pattern or Practice Method of Proof

The issue raised by the defendants on this motion is whether the plaintiffs – who are a family of individuals and a private fair-housing association – can state a claim against the defendants under these provisions by alleging that they engaged in a "pattern or practice" of racial steering. Title VIII does explicitly authorize suits by the Attorney General in response to a "pattern or practice" of discrimination. *See* 42 U.S.C. § 3614(a). In this area as well, Title VII of the Civil Rights Act includes a parallel provision. *Id.* § 2000e-6(a). Only

---

[1] The "applied for" requirement must be interpreted somewhat flexibly in racial steering claims, since plaintiffs often claim to have been steered away from housing before making a formal offer to purchase or rent. This subtlety, however, is not of consequence to the issues presented in this motion.

6

in the Title VII context have the legal doctrines applicable to "pattern or practice" suits been developed significantly. Some discussion of these precedents will further illuminate the nature of the instant motion.

Because "Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination," *Cooper v. Fed. Res. Bank of Richmond*, 467 U.S. 867, 877 (1984) (quoting *Gen. Telephone Co. of S.W. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)), the existence of an employer's abstract policy of discrimination is not itself illegal. Under *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362 proof that an employer had a pattern or practice of illegal discrimination "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." Thus, in "pattern or practice" enforcement suits brought by the attorney general pursuant to § 2000e-6(a), the government's

> initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant.

*Id.* at 360. The Court noted that

> [w]hile a pattern might be demonstrated by examining the discrete decisions of which it is composed, the Government's suits have more commonly involved proof of the expected result of a regularly followed discriminatory policy. In such cases the employer's burden is to provide a nondiscriminatory explanation for the apparently discriminatory result.

*Id.* at 360 n.46. Once the government has proven the existence of such a pattern or practice, it is entitled to equitable relief against the defendant, and may go on to request

7

individualized relief for particular employees.  *Id.* at 361-62.  If the government requests such individualized relief,

> [t]he proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination. . . . [T]he burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.

*Id.* at 362.

From this ruling, it follows that when the government seeks relief for individual employees, proof of a *Teamsters* pattern or practice does not permit it to entirely dispense with the elements of a *prima facie* case under *McDonnell Douglas*.  What it *does* do, by creating an inference that individual applicants of the protected class were rejected because of their membership in that class, and not for some other reason, is substitute for separate proof of the *McDonnell-Douglas* requirements that an individual employee have been qualified for the job, and that the job remained open after his or her rejection.  *See Rutstein v. Avis Rent-a-Car Sys., Inc.*, 211 F. 3d 1228, 1237-39 (11th Cir. 2000). Consistent with the *McDonnell-Douglas* approach, once this *prima facie* case has been made, the employer is offered a chance to rebut the inference.  Accordingly, it has been said that "[a] "pattern or practice" claim is not a separate cause of action, but merely another method by which disparate treatment can be shown," *Mooney v. Aramco Servs. Co.*, 54 F. 3d 1207, 1219 (5th Cir. 1995)

B.  Availability of Pattern or Practice Method of Proof

In this case, the complaint repeatedly refers to a "pattern or practice" of discrimination that Town & Country allegedly engaged in.  Town & Country apparently reads this language as an attempt by the plaintiffs to take advantage of a *Teamsters*-style inference of

8

discrimination. Town & Country claims that in contrast to the Attorney General, who as noted is authorized by statute to bring suit based on a pattern or practice of discrimination, private plaintiffs are not permitted to make this sort of attempt.[2] As a result, the defendants request "that this Court dismiss NFHA's complaint for failure to state a claim upon which relief may be granted vis-a-vis its pattern or practice claims." Def. brief, docket no. 90, at p. 19.

As noted above, a bare allegation that a defendant had an abstract pattern or practice of discrimination is not a cognizable legal claim. Thus, to the extent that the plaintiffs here seek to recover based purely on the existence of an alleged pattern or practice of discrimination at Town and Country, judgment on the pleadings is warranted and will be granted. Indeed, although the complaint can be read to state such a claim, it appears unlikely that the NFHA intended as much. Certainly it made no attempt to defend such a theory in its brief in response to the instant motion.

It appears, however, that the defendants' request for judgment on the pleadings as to "pattern or practice claims" is really a request for judgment as to any disparate-treatment claim that might be *proven* via the pattern or practice method, by using a *Teamsters* inference. The Court notes that "in the alternative" to its motion for judgment, Town and Country requests "an order denying the use of the pattern or practice method of proof in

---

[2] The parties agree that the pattern or practice method of proof is available in class action lawsuits. This suit, however, is not a class action. They further agree that in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 & n.23 (1982), the Supreme Court permitted a private, non-class Title VIII plaintiff to sue based on an "unlawful practice" of discrimination that extended over a period of time, even when recovery for some of the individual instances of the practice would otherwise be barred by the relevant statute of limitations. The defendants here, however, argue that this precedent has been undermined by the Supreme Court's later rejection of such a theory in the Title VII context. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, ___; 127 S. Ct. 2162, 2172-73 (2007). In any event, there is no dispute that no such statute of limitations issue is presented by the present case.

9

this case." *Id.* at pp. 19-20.    If the defendants regarded the pattern and practice "claims" on which it is moving for judgment as distinct from the pattern or practice "method of proof" which it asks the Court to bar, there would be no need for these two forms of relief to be requested in the alternative.  Thus, the Court infers that they regard the two as identical, and that their motion for judgment on the pleadings covers both.

The question of whether an individual Title VIII plaintiff may prove a pattern or practice of discrimination and take advantage of a *Teamsters*-type inference has not been clearly answered by federal courts.  *See* n.2, *supra*.  But two factors convince this Court that the instant motion does not properly present the issue for resolution at this time.  First, the complaint includes ample allegations of individual acts of disparate treatment, such that each count of the NFHA's case could go forward on that basis even if the Court were to conclude that the pattern-or-practice method of proof is unavailable here.  Second, even were that not the case, in its response brief and at the hearing on this matter the NFHA has explicitly disclaimed any intent to utilize the pattern-or-practice method of proof to create any kind of *Teamsters* inference in this case.  Instead, the NFHA contends that its complaint uses terms like "pattern," "practice" and "policy" only to describe the series of wrongful disparate treatment it claims Town and Country has engaged in, and not to denote any special theory of proving that treatment.

As a result of both these factors,  any decision by this Court as to whether a *Teamsters*-type inference is available in this case would have no effect on the viability of any aspect of the complaint, and would thus border on being an advisory opinion.  The Court declines to engage in this kind of shadowboxing.  If at some point in this case it appears that the NFHA is actually relying on a *Teamsters*-type inference, or that it could only recover through such a reliance, Town and Country may raise this issue again in a

motion for partial or total summary judgment. For the present, judgment on the pleadings is not warranted as to this issue.

As a final alternative, Town and Country argues that only equitable remedies are available in pattern-or-practice cases, and requests an order "limiting NFHA's damages to equitable remedies only." Again, such an order will be ripe for consideration only if and when it appears that the NFHA will or must rely on a pattern or practice method of proof.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that:

Defendants' motion for judgment on the pleadings is **GRANTED IN PART**, with respect to any claim for relief the plaintiffs have asserted based purely on a generalized pattern or practice of racial discrimination engaged in by defendants;

Judgment on the pleadings is **GRANTED** in favor of defendants with respect to any such claim; and

The motion is otherwise **DENIED**, with respect to the claims for relief the plaintiffs have asserted based on individual acts of disparate treatment based on race, and insofar as it seeks an order precluding plaintiffs from proving those acts in part by establishing that defendants engaged in such a pattern or practice, or limiting the relief that plaintiffs may obtain if they use such a method of proof.

**SO ORDERED.**

s/Stephen J. Murphy, III
Stephen J. Murphy, III
United States District Judge

Dated: January 26, 2009

11

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 26, 2009, by electronic and/or ordinary mail.

                                              <u>Alissa Greer                        </u>
                                              Case Manager

2:07-cv-10385-SJM-MJH   Doc # 141   Filed 01/26/09   Pg 12 of 12   Pg ID 2809

12